SCOTT v. STATE.

Opinion delivered June 30, 1930.

*Nat Hughes, Roy Dunn* and *Hardin & Barton,* for appellant.

*Hal L. Norwood,* Attorney General, and *Robert F. Smith,* Assistant, for appellee.

McHANEY, J. This appeal comes from a judgment of conviction of appellant on an indictment charging embezzlement of trust funds, the property of D. B. Castleberry, in the sum of $769.49, alleged to have been embezzled on December 31, 1925, but which was not discovered until September 17, 1929.

Appellant was circuit clerk of Logan County from January 1, 1921, to December 31, 1924. He was succeeded in office by the late Ernest Ervin, who died before the expiration of his term. In 1921, an old gentleman by the name of Dr. Fountain died testate. His will named Mr. Castleberry as executor, and made this provision relative to his property: ''I direct my said executor to sell all my personal property of every kind and the homestead in which I now live and draw all the money I have in the Citizens' Bank at Booneville, Arkansas, or any other place, put it all together and deposit in the circuit clerk's office in the city of Booneville, Arkansas, there to be loaned out by the said circuit clerk to the best advantage. Provided further that said clerk draw from said fund each year a sufficient sum to keep my family's graves cleaned and cared for and whatever part he might think was right for me to pay in cleaning and caring for the entire graveyard.''

The executor complied with this provision of the will by depositing said sum of money with appellant as circuit clerk on April 27, 1921. It is charged that he embezzled this money. The indictment was returned January 22, 1930.

Appellant demurred to the indictment on the ground that it showed on its face that it was barred by the statute of limitations, but the court overruled the demurrer. This is the first assignment of error argued, and, if it be well taken, it becomes unnecessary to discuss other assignments.

It is conceded that the action is barred but for the provisions of act 202, Acts 1923, p. 176, which amends § 2886, C. & M. Digest, so as to read as follows: "No person shall be prosecuted, tried and punished for any other felony unless an indictment be found within three years after the commission of the offense; provided, that in cases of embezzlement of funds by an administrator, guardian or curator the limitation shall not begin to run until an accounting has been had and such administrator, guardian or curator has been ordered by a court of competent jurisdiction to pay over the funds and in other cases of embezzlement of trust funds the limitation shall not begin to run until the defalcation is discovered." The proviso in the above act is the change made in the old statute. The case was tried on the theory that the last clause in the proviso was applicable; and, since the actual discovery of the defalcation was not made until within the period of three years, the statute did not begin to run until that time, and the cause of action was not barred. Appellant contends that the fund was not a trust fund within the meaning of the statute, and that appellant was a mere gratuitous bailee of the fund and not a trustee. Certainly he was not a trustee of an express trust. *United States Fidelity & Guaranty Co.* v. *Smith,* 103 Ark. 145; *Arnold* v. *Stephens,* 173 Ark. 205. But whether the funds were trust funds, whether appellant was a trustee or bailee, we are of the opinion that

the statute of limitations began to run January 1, 1925, when his successor took office, and that the cause of action was barred three years thereafter. The will provided that the fund be deposited in the "circuit clerk's office in the city of Booneville, Arkansas." Appellant happened to be the circuit clerk at the time. It was not to be deposited with appellant as an individual, but with the circuit clerk. He held the fund as clerk, and when he went out of office, it immediately became his duty to account to and settle with his successor in office as clerk. If he failed to do so, it became immediately discoverable that he had not done so, and any person interested could have known the facts by simply inquiring of the clerk. Incumbents in the clerk's office come and go, but the office of circuit clerk, like Tennyson's brook, goes on forever. Apparently, no person made inquiry until after the death of Mr. Ervin, and then not until September 1, 1929, more than four years after appellant had ceased to be the clerk. Suppose no inquiry had been made for ten or even twenty years, could it reasonably be contended that the statute did not begin to run until inquiry was made? We think not.

The judgment will be reversed, and the cause remanded with directions to sustain the demurrer, as the indictment shows on its face it is barred.